# IN THE COURT OF APPEALS OF IOWA

No. 21-0658
Filed August 3, 2022

**ANDREW XAVIER RAMIREZ,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.


The applicant appeals the denial of postconviction relief.  **AFFIRMED.**


Nicholas Einwalter, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.


Considered by Tabor, P.J., May, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BLANE, Senior Judge.**

Andrew Ramirez appeals the denial of postconviction relief (PCR). He raises five main contentions and a claim of cumulative prejudice. Because we find no merit in his contentions and no cumulative prejudice, we affirm.

## I. FACTS AND BACKGROUND PROCEEDINGS

In 2014, Ramirez was convicted by jury trial of first-degree robbery and going armed with intent. On direct appeal, this court affirmed his convictions, rejecting his argument the State failed to show sufficient evidence to support the verdict. We summarized the facts as follows:

> On September 25, 2013, the victim, an elderly woman, was entering a department store when two men walked up to her, pointed a gun at her chest, and stole her aqua-colored purse, which contained various debit and credit cards. She testified at trial that the men were wearing dark clothes and that they were young, short, without facial hair, and Hispanic. In her deposition, she stated the men did not have any tattoos, and following a lineup at the police station, she could not identify the men who robbed her. A second witness observed one of the men leaving the department store, wearing a royal blue hoodie pulled over his head. At trial, the victim testified the moments when her purse was taken were over "like a flash."
>
> Before the victim cancelled her credit and debit cards, they were used three times at convenience stores. Officers obtained video surveillance from the stores, which showed a Hispanic woman exiting an extended cab truck at the time the cards were used. Other purchases were also made in the mall. Video obtained from the Capz store showed three people later determined to be Frances Gasca, Ramirez, and Jose Morales purchasing items. The three also visited other stores at the mall, and two attempts to make purchases were unsuccessful. All attempts to use the credit and debit cards were on September 25, 2013.
>
> Ramirez was arrested on September 26, while with Gasca. Gasca stated she and Ramirez were married and lived together. Upon a search of their residence, officers discovered hats and a receipt from Capz dated September 25, as well as shoes purchased the same day. Officers also found the victim's purse, a BB gun, and two royal blue sweatshirts in the basement. An extended cab truck was also searched, and inside Gasca's wallet were credit and debit

card receipts showing the victim's cards' numbers, as well as the victim's credit and debit cards, and her driver's license. No incriminating evidence was found in Ramirez's wallet.

*State v. Ramirez*, No. 14-1172, 2015 WL 4468855, at *1 (Iowa Ct. App. July 22, 2015). The State charged Ramirez with first-degree robbery and going armed with intent, both directly and as aider and abettor. At trial, Ramirez testified and denied any involvement in the robbery. He claimed a friend, Jose Morales, came to his home and stored a blue sweater in his basement, which Ramirez assumed must have concealed the stolen purse and BB gun. The jury convicted Ramirez as charged in a general verdict.

Shortly after his convictions were affirmed on direct appeal, Ramirez filed a PCR application. Weighing Ramirez's allegations of ineffective assistance, the PCR court ultimately denied him relief. Ramirez appeals.

## II. SCOPE AND STANDARD OF REVIEW

Our review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 521 (Iowa 2021). Ramirez must prove trial counsel failed to perform an essential duty and this failure resulted in prejudice. *Sauser v. State*, 923 N.W.2d 816, 818 (Iowa 2019) (citation omitted).

"Under the first prong, we measure counsel's performance against the standard of a reasonably competent practitioner." *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020) (cleaned up for readability). We start with the presumption that counsel operated competently. *Id.*

"Under the second prong, [Ramirez] is required to show the results of the proceeding would have been different but for counsel's error." *Sauser*, 923 N.W.2d at 819. In other words, Ramirez "must show that, absent the errors, the fact finder

would have had a reasonable doubt respecting guilt." *Boothby*, 951 N.W.2d at 863 (cleaned up for readability). "The likelihood of a different result must be substantial, not just conceivable." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (citation omitted). "We deny an ineffective-assistance claim if the defendant fails to show either prong." *Boothby*, 951 N.W.2d at 863.

## III. ANALYSIS

### A. Failure to object to omission of specific intent language in Jury Instruction No. 21

Ramirez's first contention is that trial counsel performed deficiently when she failed to object to the lack of specific intent language in Jury Instruction No. 21 regarding aiding and abetting. That instruction provided:

> All persons involved in the commission of a crime, whether they directly committed the crime or knowingly, "aid and abet" its commission, shall be treated in the same way.
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting". Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting".
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.

The comment to the Model Jury Instruction gives the following though:

> Note: Add the following paragraph if the offense involves specific intent: "the crime charged requires a specific intent. Therefore, before you can find the defendant 'aided and abetted' the commission of the crime, the State must prove the defendant either has such specific intent or 'aided and abetted' with the knowledge the others who directly committed the crime had such specific intent.

> If the defendant did not have the specific intent, or knowledge the others had such specific intent, [he] [she] is not guilty.

Model Criminal Jury Instruction 200.8 c. (2013).

The PCR court found, and the State admits on appeal, that counsel's failure to object to the instruction without the additional language was a breach of an essential duty. *See Daniels v. State*, No. 18-0672, 2019 WL 6894225, at *5 (Iowa Ct. App. Dec. 18, 2019) (finding counsel breached an essential duty in failing to object to omission of the specific intent language in the aiding and abetting instruction). But the PCR court found Ramirez did not show prejudice because "it is unlikely a reasonable jury could come to the conclusion that Ramirez did not possess specific intent." *See State v. Williams*, No. 19-0152, 2020 WL 4497993, at *5 (Iowa Ct. App. Aug. 5, 2020) ("[A]n ineffective-assistance-of-counsel claim based on failure to preserve jury instruction error must demonstrate deficiency and prejudice." (citation omitted)). We agree there was no prejudice.

First, the marshalling instructions for first-degree robbery and going armed with intent contained specific intent language. For first-degree robbery, the jury had to find Ramirez "had the specific intent to commit a theft." Theft is "when a person takes possession or control of the property of another with the intent to deprive the other of that property." For going armed with intent, the jury had to find Ramirez "was armed with the specific intent to use the BB pistol against another person." Specific intent was defined as "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

The record contains substantial evidence Ramirez had specific intent to commit a theft. The victim testified two men walked up to her at the mall, pointed

a gun at her chest, and took her purse. The jury found Ramirez was one of those men, and we affirmed its finding on appeal. *Ramirez*, 2015 WL 4468855, at *3. Later those two men were videotaped using the victim's credit cards at other stores in the mall. The victim's purse, her cards, and the merchandise with receipts showing use of those cards to purchase were recovered in Ramirez's possession, along with a BB gun. Because intent can "seldom be proved by direct evidence," we look at "circumstantial evidence and inferences reasonably drawn from the circumstances." *State v. Crawford*, 974 N.W.2d 510, 518 (Iowa 2022). The circumstances here show substantial proof Ramirez both took possession of the victim's property without planning to return it, and brought a BB gun specifically to assist in the commission of the offense.

Ramirez argues there is insufficient evidence that he was aware there would be a weapon present during the robbery. But "[e]vidence of a defendant's presence, companionship, and conduct before and after the offense is committed may be enough from which to infer a defendant's participation in the crime." *Id.* at 519 (cleaned up for readability). The BB gun was recovered at Ramirez's home, which is sufficient for a jury to conclude he participated in the offenses with knowledge he was armed. We conclude there was no reasonable probability the jury would not have found Ramirez possessed specific intent to commit both offenses. So Ramirez has failed to prove counsel was ineffective, despite her failure to object to the jury instruction.

## B. Failure to argue lack of substantial evidence of specific intent

Ramirez next argues trial counsel was ineffective when she failed to argue the State did not establish his specific intent to commit the offenses. He asserts

without elaboration that he was prejudiced by this failure. But as we explained above, Ramirez would not have been prejudiced by counsel's failure because there is no reasonable probability that the jury would have found he lacked the specific intent to commit both offenses. Ramirez has not established ineffective assistance of counsel on this ground.

### C. Failure to request jury instruction and argue lack of substantial evidence BB gun was a dangerous weapon

Next, Ramirez argues he received ineffective assistance when trial counsel failed to argue the State did not prove the BB gun was a dangerous weapon and failed to request a jury question to that affect. For first-degree robbery, the jury had to find Ramirez was armed with a "dangerous weapon." And for going armed, the jury had to find "[t]he BB pistol was a dangerous weapon" according to the "dangerous weapon" marshalling instruction. That instruction provided:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device usually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

Thus, whether the BB gun was a dangerous weapon was a question of fact for the jury. *See State v. Dallen*, 452 N.W.2d 398, 399 (Iowa 1990) (finding sufficient evidence was presented for jury to conclude a BB gun was a dangerous weapon). Ramirez argues counsel was ineffective in not asking the court to require the BB gun be operational at the time of the offenses.

We find there is no reasonable probability the jury would have concluded the BB gun was not a dangerous weapon. At trial, a Marshalltown police officer

testified to the functioning of a BB gun, its propellant, and its projectiles. On the stand, he examined the BB gun and determined it contained propellant and was capable of shooting at a velocity sufficient to pierce tissue. He also noted a warning in the gun manual that it is capable of causing injury and death. On cross-examination, the officer testified he was unaware if the gun had been fired or if it was presently functional. Nonetheless, we think the jury could reasonably conclude, based on the officer's testimony, the BB gun was designed primarily to cause injury and when used in its designed manner could inflict death. So Ramirez has not shown he was prejudiced by counsel's failure to request the additional jury question.

### D. Failure to make more specific argument in motion for judgment of acquittal

Ramirez next argues trial counsel was ineffective in arguing the motion for directed verdict and judgment of acquittal based on insufficiency of evidence by failing to give more specific reasons in her motions. The supreme court recently announced, "A defendant's trial and the imposition of sentence following a guilty verdict are sufficient to preserve error with respect to any challenge to the sufficiency of the evidence raised on direct appeal." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022), *reh'g denied* (Apr. 6, 2022). This rule did not exist and was not available when Ramirez directly appealed. But our court answered the question anyway when it determined the evidence was sufficient to convict Ramirez of both counts. *See Ramirez*, 2015 WL 4468855, at *3 (finding, although the argument was not preserved, the evidence was sufficient). So Ramirez also has not shown he was prejudiced by counsel's omission. Also, at the PCR hearing,

counsel testified their trial strategy was an all-out denial. Arguing a lack of proof of specific grounds would have conflicted with that reasonable strategy. *See State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020). Thus, trial counsel did not fail in an essential duty by not making the argument requested.

### E. Failure to subpoena codefendant

Next, Ramirez faults trial counsel for failing to subpoena his codefendant Morales. Counsel recalled that Ramirez did not want to call Morales until the eve of trial when he changed his mind. In his testimony, Ramirez also recalled that they discussed not calling Morales. He admitted that, by the time he changed his mind it "was really short notice." Ramirez testified that his attorney did not discuss delaying the trial. But his counsel testified Morales's attorney informed her Morales was taking a plea deal and would "plead the Fifth" if they called him to the stand. Counsel thought it would hurt Ramirez's case if that happened, and decided not to call Morales. Emails between the two attorneys confirm that understanding.

We agree that trial counsel executed a reasonable strategy in not calling the codefendant to the stand. *See State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019) (in assessing the "range of reasonable professional assistance . . . the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (cleaned up for readability)).

In making his argument, Ramirez points to an affidavit signed by Morales two years after the offenses supporting Ramirez's version of events. That affidavit was not known to counsel at the time, and we look at such affidavits with skepticism. *See Jones v. Scurr*, 316 N.W.2d 905, 910 (Iowa 1982). We also note

that Ramirez is not presenting this affidavit as newly discovered evidence of his innocence. *Id.* (holding that "exculpatory evidence that was unavailable, but known, at the time of trial is not newly discovered evidence" and "already convicted codefendants have nothing to lose by making statements that exculpate defendant"). So we conclude Ramirez has not shown counsel failed in an essential duty by not calling Morales.

### F. Cumulative prejudice

Finally, Ramirez asserts he is entitled to relief based on cumulative error. Where an applicant asserts multiple claims of ineffective assistance of counsel, "the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong." *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Examining all the claims together, we find the cumulative effect of any prejudice did not result in Ramirez receiving an unfair trial. We affirm the denial of relief.

**AFFIRMED.**